IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BMO HARRIS BANK N.A., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AZIM TRANSPORTATION INC. f/k/a ) <br> AZIM TRANS INC., a corporation, and ) <br> AZIM MURADOV, an individual, ) <br> ) <br> Defendants. ) | Case No. _____ |

## VERIFIED COMPLAINT

Plaintiff BMO Harris Bank N.A., by and through its undersigned counsel, complains of defendants Azim Transportation Inc. f/k/a Azim Trans Inc. and Azim Muradov (collectively, the "Defendants"), as follows:

### I.  THE PARTIES

1. Plaintiff BMO Harris Bank N.A. (the "Bank") is a national banking association with a principal place of business located at 320 S. Canal Street, Chicago, Illinois 60606.

2. Defendant Azim Transportation Inc. f/k/a Azim Trans Inc. ("Borrower") is a corporation, with a principal place of business at 530 Jason Drive, Southampton, Pennsylvania 18966, and a registered office address of 851 Red Lion Road, Apartment S1, Philadelphia, Pennsylvania 19115.

3. Defendant Azim Muradov ("Guarantor" and, together with Borrower, the "Defendants" and each, a "Defendant") is an individual residing, upon information and belief, at 530 Jason Drive, Southampton, PA 18966.

1

## II. JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the Bank and Defendants are of diverse citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as the Defendants reside in this District. Specifically, Defendants are present and doing business in this District and therefore subject to the Court's personal jurisdiction (*see* 28 U.S.C. § 1391(c)(2)) and Guarantor is a natural person domiciled in this District (*see* 28 U.S.C. § 1391(c)(1)).

## III. FACTUAL BACKGROUND

### A. The Loan Agreements

#### i. The First Loan Agreement

6. On September 22, 2020, Borrower and Bank, as lender, entered into that certain Loan and Security Agreement (the "First Loan Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of three (3) 2021 Freightliner Cascadia-Series: CA12564SLP 125″ BBC Conv Cab W/72″ RR SLPR Tractor 6X4 identified by serial numbers 3AKJHHDR6MSMR8176; 3AKJHHDR8MSMR8177; and 3AKJHHDR8MSMR8180 (collectively, the "First Loan Collateral"), in exchange for a total payment of $568,385.40, payable in 60 monthly installments of $9,473.09 each, commencing on November 10, 2020. A copy of the First Loan Agreement is attached hereto as **Exhibit A**.

7. As consideration for entering into the First Loan Agreement, Borrower granted Bank a security interest in and to the First Loan Collateral as more fully described in the First Loan Agreement. *See* First Loan Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit B**, Bank perfected its security interest in and to the First Loan Collateral by recording its lien with the Commonwealth of Pennsylvania.

8.      As further consideration for entering into the First Loan Agreement, on or about September 22, 2020, Guarantor executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the First Loan Agreement (the "First Loan Guaranty"). A true and correct copy of the First Loan Guaranty is attached hereto as **Exhibit C** and incorporated herein.

      ii.     The Second Loan Agreement

9.      On July 23, 2021, Borrower and Bank, as lender, entered into that certain Loan and Security Agreement (the "Second Loan Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of one (1) 2022 Freightliner Cascadia-Series: CA12564SLP 125″ BBC Conv Cab W/72″ RR SLPR Tractor 6x4 identified by serial number 1FUJHHDR2NLNA4239 (the "Second Loan Collateral"), in exchange for a total payment of $196,660.20, payable in 60 monthly installments of $3,277.67 each, commencing on September 1, 2021. A copy of the Second Loan Agreement is attached hereto as **Exhibit D**.

10.     As consideration for entering into the Second Loan Agreement, Borrower granted Bank a security interest in and to the Second Loan Collateral as more fully described in the Second Loan Agreement. *See* Second Loan Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit E**, Bank perfected its security interest in and to the Second Collateral by recording its lien with the Commonwealth of Pennsylvania.

11.     As further consideration for entering into the Second Loan Agreement, on or about July 23, 2021, Guarantor executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Second Loan Agreement (the "Second Loan Guaranty"). A true and correct copy of the Second Loan Guaranty is attached hereto as **Exhibit F** and incorporated herein.

3

### iii. The Third Loan Agreement

12. On October 13, 2021, Borrower and Bank, as lender, entered into that certain Loan and Security Agreement (the "Third Loan Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of five (5) 2022 Atro 53′ Dry Van identified by serial numbers 3ELA6RX21NG000259; 3ELA6RX26NG000256; 3ELA6RX28NG000257; 3ELA6RX28NG000260; 3ELA6RX2XNG000258 (collectively, the "Third Loan Collateral"), in exchange for a total payment of $241,710.60, payable in 60 monthly installments of $4,028.51 each, commencing on December 1, 2021. A copy of the Third Loan Agreement is attached hereto as **Exhibit G**.

13. As consideration for entering into the Third Loan Agreement, Borrower granted Bank a security interest in and to the Third Loan Collateral as more fully described in the Third Loan Agreement. *See* Third Loan Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit H**, Bank perfected its security interest in and to the Third Loan Collateral by recording its lien with the State of Maine.

14. As further consideration for entering into the Third Loan Agreement, on or about October 13, 2021, Guarantor executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Third Loan Agreement (the "Third Loan Guaranty"). A true and correct copy of the Third Loan Guaranty is attached hereto as **Exhibit I** and incorporated herein.

### iv. The Fourth Loan Agreement

15. On January 31, 2022, Borrower and Bank, as lender, entered into that certain Loan and Security Agreement (the "Fourth Loan Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of two (2) 2022 Freightliner Cascadia-Series: CA12564SLP 125″ BBC Conv Cab W/72″ RR SLPR Tractor 6X4 identified by serial numbers

4

3AKJHHDR1NSNJ5466 and 3AKJHHDR7NSNJ5469 (collectively, the "<u>Fourth Loan Collateral</u>"), in exchange for a total payment of $505,390.20, payable in 60 monthly installments of $8,423.17 each, commencing on March 1, 2022. A copy of the Fourth Loan Agreement is attached hereto as **Exhibit J**.

16. As consideration for entering into the Fourth Loan Agreement, Borrower granted Bank a security interest in and to the Fourth Loan Collateral as more fully described in the Fourth Loan Agreement. *See* Fourth Loan Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit K**, Bank perfected its security interest in and to the Fourth Loan Collateral by recording its lien with the Commonwealth of Pennsylvania.

17. As further consideration for entering into the Fourth Loan Agreement, on or about January 31, 2022, Guarantor executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Fourth Loan Agreement (the "<u>Fourth Loan Guaranty</u>"). A true and correct copy of the Fourth Loan Guaranty is attached hereto as **Exhibit L** and incorporated herein.

**B.     Default Provisions**

18. Hereinafter, the First Loan Agreement, Second Loan Agreement, Third Loan Agreement, and Fourth Loan Agreement are collectively referred to as the "<u>Loan Agreements</u>". The First Loan Collateral, Second Loan Collateral, Third Loan Collateral, and Fourth Loan Collateral, are referred to collectively as the "<u>Collateral</u>." The First Loan Guaranty, Second Loan Guaranty, Third Loan Guaranty, and Fourth Loan Guaranty are collectively referred to as the "<u>Guaranties</u>."

19. Pursuant to the Loan Agreements, an Event of Default shall occur if, *inter alia*, Defendants fail to pay when due any amount owed to Bank under the Loan Agreements. *See* Loan Agreements § 5.1.

20. Additionally, an Event of Default shall occur if "Debtor or Guarantor fails to pay any Liabilities when due to Bank or any Affiliate of Bank or is otherwise in default under any other document, agreement or instrument…." *Id.*

21. Pursuant to the Loan Agreements, upon the occurrence of an Event of Default, Bank may, at its option, with or without notice to Defendants, *inter alia*, (i) declare the Loan Agreements to be in default, (ii) declare the indebtedness under the Loan Agreements to be immediately due and payable, and (iii) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code. *See* Loan Agreements § 5.2. All of Bank's rights under the Loan Agreements are cumulative and not alternative. *See* Loan Agreements §7.3(b).

22. Pursuant to the Loan Agreements, Defendants are obligated to pay Bank all expenses of retaking, holding, preparing for sale, selling and the like of the Collateral, including without limitation (a) the reasonable fees of any attorneys retained by Bank and (b) all other legal expenses incurred by Bank. *See* Loan Agreements § 5.2.

23. Defendants are liable to Bank for any deficiency remaining after disposition of the Collateral after default. *See id.*

24. Upon acceleration of Defendants' obligations under the Loan Agreements, interest on all sums then owing shall accrue at the rate of 1½% per month. *See* Loan Agreements § 5.3.

25. Pursuant to the terms of the Loan Agreements, Defendants waived their right to a jury trial of any claim or cause of action relating thereto. *See* Loan Agreements § 7.5.

26. Pursuant to the terms of the Guaranties, Guarantor waived his right to a jury trial of any claim or cause of action relating thereto. *See* Guaranties.

**C.   The Payment Defaults**

27. Borrower is in default under the terms and conditions of the Loan Agreements, having failed, *inter alia*, to make payments when due thereunder.

6

28. Guarantor is in default under the terms and conditions of the Guaranties, having failed to make payments when due thereunder.

29. Bank has performed any and all obligations to be performed by it under the terms of the Loan Agreements and the Guaranties.

30. On January 23, 2023, Bank notified Defendants of the default status of the Loan Agreements (the "Default Notices") and demanded payment in full on the Loan Agreements. True and correct copies of the Default Notices are attached hereto as **Exhibit M** and incorporated herein.

31. At the time of filing of this Complaint, Defendants have not cured the default under the Loan Agreements and the Guaranties, as set forth in the Default Notices.

32. Due to these defaults and pursuant to the express terms of the Loan Agreements and Guaranties, Bank is entitled to contractual money damages as set forth therein.

33. As of January 24, 2023, the balance due under the Loan Agreements was not less than $972,759.64, not including interest, attorneys' fees, and costs of recovery.

### D. Bank's Damages

34. As a result of the breaches by Defendants under the Loan Agreements and Guaranties, Bank has been damaged in an aggregate amount equal to not less than $972,759.64, not including interest, attorneys' fees, and costs of recovery as of January 24, 2023.

35. The Loan Agreements permits Bank to collect, as additional damages, its attorneys' fees and costs of collection incurred in relation to the Loan Agreements and the Collateral. *See* Loan Agreements, § 5.2.

### COUNT I – BREACH OF CONTRACT
### (Borrower)

36. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

37. Bank has performed all terms and conditions of the Loan Agreements to be performed by Bank.

38. In contrast, Borrower has not performed under the Loan Agreements and has failed to make payments to Bank under the Loan Agreements when due.

39. Under the Loan Agreements, Bank is entitled to contractual money damages from Borrower as provided therein.

40. The amount due under the Loan Agreements as of January 24, 2023, was not less than $972,759.64, which amount is immediately due and owing from Borrower, together with interest on and after January 24, 2023, at the default rate specified in the Loan Agreements.

41. The Loan Agreements provides that Bank shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Loan Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, penalties, and interest, together with such other and further relief as shall be just and equitable.

## COUNT II – BREACH OF GUARANTY
### (Guarantor)

42. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

43. Bank has performed all terms and conditions of the Guaranties to be performed by Bank.

44. Under the Guaranties, Guarantor is liable for all amounts due to Bank under the Loan Agreements.

45. Guarantor is in default under the terms and conditions of the Guaranties, having failed to make payments thereunder.

46. As a direct and proximate result of Guarantor's breach of the Guaranties, Bank has incurred and continues to incur substantial damages.

47. The Loan Agreements and Guaranties provide that Bank shall recover its attorneys' fees, costs of collection, and interest on all amounts due and owing.

48. Bank has been required to retain the services of counsel to prosecute this claim and is therefore entitled to an award of attorneys' fees and costs.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Guaranties, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## COUNT III – INJUNCTIVE RELIEF
### (Defendants)

49. Bank hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

50. Of the Collateral, Bank has only recovered (2) two 2021 Freightliner Cascadia-Series: CA12564SLP 125″ BBC Conv Cab W/72″ RR SLPR Tractor 6X4 identified by serial numbers 3AKJHHDR8MSMR8177; and 3AKJHHDR8MSMR8180.

51. Defendants continue to possess and utilize, or are capable of utilizing, all or some of the following Collateral for commercial purposes: one (1) 2021 Freightliner Cascadia-Series: CA12564SLP 125″ BBC Conv Cab W/72″ RR SLPR Tractor 6X4 identified by serial number 3AKJHHDR6MSMR8176, the Second Loan Collateral, the Third Loan Collateral, and the Fourth Loan Collateral (collectively, the "Remaining Collateral").

52. On any given day, the Remaining Collateral is located, or is capable of being located, in diverse places throughout Pennsylvania and surrounding states.

53. The Remaining Collateral depreciates and deteriorates as a result of its continued use by Defendants, with no commensurate value being conferred to Bank in the form of payments due and owing from Defendants.

54. Defendants have or should have in place capabilities to identify, locate, and surrender the Collateral, which capabilities may now be breaking down.

55. Bank will suffer irreparable injury for which no adequate remedy at law exists unless Defendants and other persons and firms having knowledge of this injunction are (a) enjoined from continuing to use the Remaining Collateral; (b) ordered to advise Bank of the location of the Remaining Collateral; and (c) ordered to surrender the Remaining Collateral to Bank.

WHEREFORE, Bank prays that:

a. Defendants and other persons and firms having knowledge of the injunction, be temporarily, preliminarily, and permanently enjoined from using the Remaining Collateral as of the date of entry of the injunction order;

b. Defendants be ordered to disclose to Bank the precise location of the Remaining Collateral in order for Bank to reclaim it;

c. Defendants be ordered to recover the Remaining Collateral in the hands of third parties for delivery to Bank;

d. Defendants be temporarily, preliminarily, and permanently enjoined from restricting access of Bank to the Remaining Collateral; and

e. Bank be granted such other and further relief as shall be just and equitable.

## COUNT IV – SPECIFIC PERFORMANCE
### (Borrower)

56. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

57. In the event of default by Borrower under the Loan Agreements, Borrower is obligated to return the Collateral at its expense and to any location that Bank directs.

58. In the event of default by Borrower under the Loan Agreements, Bank is entitled to take possession of the Remaining Collateral including directing Borrower to remove it to a place deemed convenient by Bank.

59. Defendants have refused to return possession of the Remaining Collateral.

60. Bank has performed its obligations under the Loan Agreements, and is ready, willing, and able to perform under the Loan Agreements.

61. Despite demand by Bank, Borrower failed to cure its defaults under the Loan Agreements and has failed to return the Remaining Collateral.

WHEREFORE, Bank prays that Judgment be entered in Bank's favor and against Borrower directing Borrower to specifically perform its obligations under the Loan Agreements, and to return and allow the removal of the Remaining Collateral, and that Bank be granted such other and further relief as shall be just and equitable.

## COUNT V – REPLEVIN
### (Borrower)

62. Bank hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

63. This claim is brought pursuant to Pa. R. Civ. P. 1075.1.

64. Pursuant to the Loan Agreements, upon Borrower's default, Bank is lawfully entitled to possession of the Remaining Collateral.

65. The Remaining Collateral is wrongfully detained by Borrower.

11

66. Based upon the best knowledge, information, and belief of Bank, the value of the Remaining Collateral, in the absence of inspection, and assuming good condition and maintenance, and for purposes of setting bond only, is estimated to be approximately $587,510.00.

67. The Remaining Collateral has not been seized under any process, execution, or attachment against the property of Bank.

68. Based upon the best knowledge, information, and belief of Bank, the Remaining Collateral may be located at 530 Jason Drive, Southampton, Pennsylvania 18956, but may not be located at that location at any particular time.

69. Given Borrower's possession of the Remaining Collateral, it is within the power of Borrower to conceal, waste, encumber, convert, convey, or remove the Remaining Collateral from the jurisdiction of the Court, or Bank's post-judgment remedy would be otherwise inadequate.

70. Bank claims the value of the Remaining Collateral not delivered to the officer by virtue of the enforcement of an order of replevin.

WHEREFORE, Bank requests that:

a. An order of replevin be entered in favor of Bank granting Bank possession of the Remaining Collateral;

b. Bank be awarded a judgment against Borrower for the value of the Remaining Collateral if not delivered;

c. Bank be awarded a judgment against Borrower for damages for detention;

d. Bank be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

e. Bank be granted such other and further relief as shall be just and equitable.

Dated: February  22 , 2023

Respectfully submitted,

_____
Mark W. Fidanza (SBN 320930)
REED SMITH LLP
Three Logan Square
Suite 3100
Philadelphia, PA  19103-7301
Telephone: +1 215 851 8100
Facsimile: +1 215 851 1420

*Counsel for Plaintiff BMO Harris Bank N.A.*

**VERIFICATION**

STATE OF IOWA           )
                        )
COUNTY OF LINN          )

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true. I further declare that: My name is Sheila Aschenbrenner, I am a litigation specialist of plaintiff, BMO Harris Bank N.A. (the "Bank"), I have authority to make this Verification on the Bank's behalf, and this Verification is made based on my personal knowledge and as facts appear in the business records of the Bank.

*[signature]*
Sheila Aschenbrenner
Litigation Specialist
BMO Harris Bank N.A.

Sworn and subscribed before me this _21_ day of February 2023, by Sheila Aschenbrenner, as Litigation Specialist of BMO Harris Bank N.A. and on its behalf, who ( ✓ ) is personally known to me or ( __ ) has produced _____ as identification.

*[signature]*
Notary Public, State of Iowa

Printed Name: _Micki S Koepke_

Commission No.: _826748_

My commission expires: _10-1-2023_

**MICKI S KOEPKE**
Notarial Seal - Iowa
Commission No. 826748
My Commission Expires Oct. 01, 2023

14