# EXHIBIT L

## CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns (individually called "Guarantor" and collectively called "Guarantors") jointly and severally and in solido, hereby unconditionally guarantee to BMO HARRIS BANK N.A. and its affiliates, together with the respective successors, endorsees and assigns of each of the foregoing (collectively called "Bank") that AZIM TRANSPORTATION INC (the Company), whose address is 530 JASON DR., SOUTHAMPTON, PA 18966 shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Bank, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise acquired by Bank (all of which liabilities, obligations and indebtedness are herein individually and collectively called the "Indebtedness"). This Guaranty is an absolute and unconditional guarantee of payment and not of collectability. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the Indebtedness or any instruments, agreements or chattel paper related thereto (collectively called "Agreements") or any security or collateral there for (collectively called "Security") or the pursuit by Bank of any rights or remedies which it now has or may hereafter have. If the Company fails to pay the indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by Bank by reason of the Company's default or the default of any Guarantor hereunder, and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring Bank to (i) proceed against the Company by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of the Agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Bank may have against the Company, any co-Guarantor (whether hereunder or under a separate instrument) or any other party. Each Guarantor agrees that: this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a Guarantor or surety, or by the death of any Guarantor; the records of Bank shall be received as conclusive evidence of the amount of the Indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of Bank, with or without joinder of the Company or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever which the Company may have against Bank, other than full payment of the Indebtedness; and such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding or litigation is commenced.

Each Guarantor agrees to provide promptly to Bank such financial statements and other financial records and information respecting Guarantor as Bank may from time to time request. Each Guarantor authorizes Bank, throughout the term of this Guaranty, to investigate or make inquiries of creditors or any other persons and credit bureaus regarding Guarantor (including equity holders of Guarantor), and provide to creditors or any other persons any financial, credit or other information regarding or relating to Guarantor, whether supplied by Guarantor to Bank or otherwise obtained by Bank.

EACH GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE COMPANY'S CONDITION OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY INCREASE SUCH GUARANTOR'S RISK, WHETHER OR NOT BANK HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, RIGHT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST THE COMPANY THAT ARISES HEREUNDER AND/OR FROM THE PERFORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF BANK AGAINST THE COMPANY OR ANY SECURITY WHICH BANK NOW HAS OR HEREAFTER ACQUIRES; WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT, BY STATUTE, UNDER COMMON LAW OR OTHERWISE.

No termination hereof shall be effective until the Guarantors deliver to Bank a written notice signed by them electing not to guarantee any new extension of credit that may be granted by Bank to the Company after its receipt of such notice, but such notice shall not affect the obligations of the guarantors hereunder as to any and all Indebtedness existing at the time such notice is received or incurred by the Company within thirty (30) days thereafter. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of extensions of credit given by Bank to the Company from time to time; (ii) presentment, demand, protest, and notice of non-payment or protest as to any note or other evidence of Indebtedness signed, accepted, endorsed or assigned to Bank by the Company; (iii) all exemptions and homestead laws; (iv) any other demands and notices required by law; and (v) any right to trial by jury. Bank may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor hereunder: (a) renew, extend or refinance any part or all of the Indebtedness of the Company or any Indebtedness of its customers, or of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the Indebtedness and apply such payments to any part of the Indebtedness; (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, any of the Indebtedness, any Security, or any Indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to the transfer of any Security; (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to Bank by law or agreement even if the exercise thereof may affect, modify or eliminate any rights or remedies which a Guarantor may have against the Company. Each Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Bank shall not be stopped from exercising any rights hereunder, notwithstanding (i) Bank waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the Agreements; (ii) any release of, or failure on the part of Bank to perfect any security interest in or foreclose, proceed against, or exhaust, any Security; or (iii) Bank failure to take new, additional or substitute security or collateral for the Indebtedness.

Each Guarantor agrees that Bank may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which Bank's office administering the Indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the summons to such Guarantor at its address last known to Bank. All rights and remedies of Bank are cumulative and not alternative. Each provision of this Guaranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted here from, but shall not invalidate the remaining terms and provisions hereof.

**Execution and Transmission of Documentation.** This Guaranty and any schedules, exhibits, annexes or related instruments (each an "Instrument") will be created and evidenced as follows: (i) Bank will deliver to Guarantors an electronic or paper version of each Instrument; (ii) each Guarantor will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by Bank in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to Bank by electronic, facsimile or other means; (iii) Bank will sign (electronically, digitally or manually, at its option) each signature page (if the Instrument requires Bank's signature); and (iv) Bank will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. Each Guarantor agrees that Bank may convert any Instrument signed manually into an electronic record and store it in a document management system designated by Bank, and each Guarantor hereby agrees to adopt the electronic image of its manual signature as its valid and binding electronic signature. Each Guarantor hereby represents and warrants that it has not modified the Instrument sent to it for signature. Upon a Guarantor's one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, Bank will make the same available to such Guarantor by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by Guarantors, and Bank may (at its option) retain only a copy of such Instrument and dispose of the version containing Guarantors' manual signatures. Guarantors and Bank each intend that each instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), the resulting electronic Instrument shall be the single authoritative copy (as that term is used in the applicable Uniform Commercial Code) and no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. Each Guarantor agrees not to raise as a defense to the enforcement of any Instrument that it or any other Guarantor executed such Instrument by electronic or digital means or used electronic or other means to transmit its signature on such Instrument. Notwithstanding anything to the contrary herein, Bank reserves the right to require Guarantors to sign any Instrument manually and to deliver to Bank an original of such Instrument containing Guarantors' manual signatures.

This Guaranty is subject to and governed by the laws of the State of Illinois (without regard to the conflicts of law principles of such State), regardless of the location of Guarantor or the Company.

GUARANTOR REPRESENTS THAT GUARANTOR IS A(N) OWNER OF OR IN THE COMPANY.

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty on JANUARY 31, 2022.

Witness: _Ulugbek Alidjanov_

Witness: _[signature]_

Guarantor: AZIM MURADOV   (L.S.)

By: _[signature]_   Title: INDIVIDUAL

Address: 530 JASON ST, SOUTHAMPTON, PA 18966